IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

David Curtis Blue,               )    Civil Action No.  8:15-cv-01364-MBS-JDA
                                 )
                Plaintiff,       )    **REPORT AND RECOMMENDATION**
                                 )    **OF MAGISTRATE JUDGE**
        vs.                      )
                                 )
Carolyn W. Colvin,               )
Commissioner of Social Security, )
                                 )
                Defendant.       )

        This matter is before the Court for a Report and Recommendation pursuant to Local

Rule 73.02(B)(2)(a), D.S.C., and Title 28 U.S.C. § 636(b)(1)(B).[1]  Plaintiff brought this

action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final

decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's

claims for disability insurance benefits ("DIB") and supplemental security income ("SSI").[2]

For the reasons set forth below, it is recommended that the decision of the Commissioner

be affirmed.

**PROCEDURAL HISTORY**

        On October 13, 2011, Plaintiff filed applications for DIB and SSI, alleging disability

beginning October 1, 2011.  [R. 190–205.]  The claims were denied initially and upon

---

        [1]A Report and Recommendation is being filed in this case, in which one or both parties
declined to consent to disposition by a magistrate judge.

        [2]Section 1383(c)(3) provides, "The final determination of the Commissioner of Social
Security after a hearing under paragraph (1) shall be subject to judicial review as provided
in section 405(g) of this title to the same extent as the Commissioner's final determinations
under section 405 of this title."  42 U.S.C. § 1383(c)(3).

reconsideration by the Social Security Administration ("the Administration"). [R. 72–120.] Plaintiff filed a request for hearing before an administrative law judge ("ALJ"), and on November 13, 2013, ALJ Frances W. Williams  conducted a hearing on Plaintiff's claims. [R. 37–71.]

On December 6, 2013, the ALJ issued his decision finding Plaintiff not disabled under sections 216(i) and 223(d) of the Social Security Act ("the Act"). [R. 22–31.] At Step 1[3], the ALJ found Plaintiff meets the insured status requirements of the Act through December 31, 2016, and had not engaged in substantial gainful activity since October 1, 2011, the alleged onset date.  [R.  24, Findings 1 & 2.]  At Step 2, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine with radiculopathy; sciatica; and decreased visual acuity.  [R. 24, Finding 3.]  The ALJ also noted Plaintiff had non-severe impairments of sacoidosis (although there was no documentation of sacoidosis), insomnia and headaches; and not medically determinable impairments of seizures and ulcers.  [R. 25.]

At Step 3, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1. [R. 25, Finding 4.]

Before addressing Step 4, Plaintiff's ability to perform his past relevant work, the ALJ found that Plaintiff retained the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except

---

[3]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

> for the following limitations: no lifting or carrying over 20 pounds occasionally and 10 pounds frequently; no climbing of ladders, ropes, or scaffolds; no more than occasional stooping, crouching, kneeling, balancing, crawling, or climbing of stairs or ramps; no more than occasional left lower extremity controls; no concentrated exposure to hazards; and no acute visual acuity.

[R. 25, Finding 5.] Based on this RFC, at Step 4, the ALJ determined Plaintiff was unable to perform his past relevant work as a loader / material handler, forklift operator, or spooler. [R. 29, Finding 6.] In light of Plaintiff's age, education, work experience, and RFC, and based on testimony by a vocational expert, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. [R. 30, Finding 10.] Thus, the ALJ found that Plaintiff had not been under a disability, as defined under the Act, from October 1, 2011, through the date of the decision. [R. 31, Finding 11.] The ALJ also found that, based on the application for SSI protectively filed on October 13, 2011, Plaintiff was not disabled under section 1614(a)(3)(A) of the Act. [R. 31.]

Plaintiff filed a request for review of the ALJ's decision with the Appeals Council, which denied review on January 30, 2015. [R. 2–8.] Plaintiff commenced an action for judicial review in this Court on March 25, 2015. [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ's decision is not supported by substantial evidence and contains multiple legal errors warranting the reversal and remand of the case. [*See* Doc. 17.] Specifically, Plaintiff contends the ALJ: failed to sufficiently explain the rationale for her RFC assessment; improperly penalized Plaintiff for his failure to seek treatment he could not afford; improperly discounted Plaintiff's credibility; improperly observed and relied

on the determination that Plaintiff had accepted unemployment; and improperly made medical judgments which she was unqualified to make. [*Id.*]

The Commissioner contends the ALJ's decision should be affirmed because there is substantial evidence of record that Plaintiff was not disabled within the meaning of the Act. [*See* Doc. 18.]  Specifically, the Commissioner contends the ALJ provided rationale supported by substantial evidence in determining Plaintiff's RFC; did not penalize Plaintiff for his failure to seek treatment; properly considered Plaintiff's prior work record and receipt of unemployment compensation; and properly considered Plaintiff's daily activities in evaluating his alleged symptoms.  [*Id.*]

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

4

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision). Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *See Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and

when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Comm'r*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand."). After a remand under sentence four, the court

6

enters a final and immediately appealable judgment and then loses jurisdiction. *Sargent*,

941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be
> taken before the Commissioner of Social Security, but only
> upon a showing that there is new evidence which is material
> and that there is good cause for the failure to incorporate such
> evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).  A reviewing court may remand a case to the Commissioner on the

basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the

determination of disability at the time the application was first filed; (2) the evidence is

material to the extent that the Commissioner's decision might reasonably have been

different had the new evidence been before him; (3) there is good cause for the claimant's

failure to submit the evidence when the claim was before the Commissioner; and (4) the

claimant made at least a general showing of the nature of the new evidence to the

reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C.

§ 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d

26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by*

*amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of*

*Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[4]  With remand under sentence

---

[4]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth
in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the
Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating
a claim for remand based on new evidence.  *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152,
2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107,
2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No.
2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health &*
*Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme

six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98. The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability. 42 U.S.C. § 423(a). "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.     The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the

---

Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990). Accordingly, the Court will apply the more stringent *Borders* inquiry.

impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment. 20 C.F.R. §§ 404.1520, 416.920. Through the fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). The claimant must prove disability on or before the last day of her insured status to receive disability benefits. *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Grant*, 699 F.2d at 191. If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. §§ 404.1572(a), 416.972(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* §§ 404.1572(b), 416.972(b). If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. *Id.* §§ 404.1574–.1575, 416.974–.975.

### B.    *Severe Impairment*

9

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities.  *See id.* §§ 404.1521, 416.921.  When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments.  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).  The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses.  *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them").  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments.").  If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process."  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

C.     ***Meets or Equals an Impairment Listed in the Listings of Impairments***

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. §§ 404.1509 or 416.909, the ALJ will find the claimant

disabled without considering the claimant's age, education, and work experience.[5]  20 C.F.R. §§ 404.1520(d), 416.920(a)(4)(iii), (d).

### D.    *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant."  *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[6] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. §§ 404.1560(b), 416.960(b).

### E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See* 20 C.F.R. §§ 404.1520(f)–(g), 416.920(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).  To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[7]  20

---

[5]The Listing of Impairments is applicable to SSI claims pursuant to 20 C.F.R. §§ 416.911, 416.925.

[6]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

[7]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs.  20 C.F.R. §§ 404.1569a(a), 416.969a(a).  A nonexertional limitation

C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e);  *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations).  When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931.  In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work.  20 C.F.R. §§ 404.1569a, 416.969a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy.").  The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform."  *Walker*, 889 F.2d at 50.  For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments."  *Id.* (citations omitted).

## II.     Developing the Record

---

is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.*  Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing.  20 C.F.R. §§ 404.1569a(c)(1), 416.969a(c)(1).

The ALJ has a duty to fully and fairly develop the record.  *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant issue.  *Snyder*, 307 F.2d at 520.  The performance of this duty is particularly important when a claimant appears without counsel.  *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980).  In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited."  *Id.* (internal quotations and citations omitted).

### III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. §§ 404.1527(c), 416.927(c).  Similarly, where

a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways.  *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986).  Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  20 C.F.R. §§ 404.1527(d), 416.927(d). However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. §§ 404.1517, 416.917; *see also*

14

*Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986).  The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability.  20 C.F.R. §§ 404.1517, 416.917.  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  *Id.*

## V.    Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'"  *Id.* (quoting *Craig*, 76 F.3d at 594).  Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain."  *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re

15

not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518

(4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)).  The ALJ

must consider all of a claimant's statements about his symptoms, including pain, and

determine the extent to which the symptoms can reasonably be accepted as consistent

with the objective medical evidence.  20 C.F.R. §§ 404.1528, 416.928.  Indeed, the Fourth

Circuit has rejected a rule which would require the claimant to demonstrate objective

evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and

ordered the Commissioner to promulgate and distribute to all administrative law judges

within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling

condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990).  The Commissioner

thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
>
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence.  If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability.  Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered.  Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity,

16

> severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. §§ 404.1529(c)(1)–(c)(2), 416.929(c)(1)–(c)(2) (outlining evaluation of pain).

## VI. Credibility

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria. *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor. But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**RFC Evaluation**

Plaintiff contends the ALJ's RFC determination is not supported by substantial evidence for a variety of reasons as discussed below.   On the other hand, the Commissioner argues that the ALJ's RFC determination is supported by substantial evidence.  The Court agrees with the Commissioner.

### *ALJ's RFC determination*

As noted, the ALJ found that Plaintiff retained the following RFC:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except for the following limitations: no lifting or carrying over 20 pounds occasionally and 10 pounds frequently; no climbing of ladders, ropes, or scaffolds; no more than occasional stooping, crouching, kneeling, balancing, crawling, or climbing of stairs or ramps; no more than occasional left lower extremity controls; no concentrated exposure to hazards; and no acute visual acuity.

[R.  25, Finding 5.]

### *Discussion*

 The Administration has provided a definition of RFC and explained what a RFC assessment accomplishes:

> RFC is what an individual can still do despite his or her limitations. RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work related physical and mental activities. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's

18

> abilities on that basis. A "regular and continuing basis" means
> 8 hours a day, for 5 days a week, or an equivalent work
> schedule. . . .

SSR 96–8p, 61 Fed.Reg. 34,474–01, at 34,475 (July 2, 1996)(internal citation and footnotes omitted). The RFC assessment must first identify the claimant's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. 404.1545 and 416.945. *See id.* Only after this identification and assessment may RFC be expressed in terms of the exertional levels of work: sedentary, light, medium, heavy, and very heavy. *Id.*

> Additionally, the Administration has determined that in assessing RFC, the ALJ

> > must consider only limitations and restrictions attributable to
> > medically determinable impairments. It is incorrect to find that
> > [a claimant] has limitations or restrictions beyond those caused
> > by his or her medical impairment(s) including any related
> > symptoms, such as pain, due to factors such as age or height,
> > or whether the [claimant] had ever engaged in certain activities
> > in his or her past relevant work (e.g., lifting heavy weights.)
> > Age and body habitus (i .e., natural body build, physique,
> > constitution, size, and weight, insofar as they are unrelated to
> > the [claimant]'s medically determinable impairment(s) and
> > related symptoms) are not factors in assessing RFC. . . .

*Id*. at 34,476.

To assess a claimant's RFC, the ALJ must consider all relevant evidence in the record, including medical history, medical signs, laboratory findings, lay evidence, and medical source statements. *Id*. at 34,477. SSR 96–8p specifically states, "The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Id*. at 34,478. And, an ALJ's RFC assessment will

19

necessarily entail assessing the credibility of any alleged limitations, including assessing the credibility of testimony offered by the claimant.

### *Subjective and Objective Evidence Related to Complaints of Pain*

Plaintiff challenges the ALJ's RFC evaluation arguing that, once the ALJ found Plaintiff had established the existence of medically determinable impairments reasonably expected to cause his alleged symptoms, Plaintiff was then entitled to "rely exclusively on subjective evidence to prove the intensity, persistence and severity of the related symptoms." [Doc. 17 at 7–8.] Plaintiff contends that "[b]ecause the ALJ failed to articulate a legally sound basis for finding [Plaintiff's] complaints 'completely erode[d]' by the evidence of record, and because this was arguably the sole basis for her RFC finding," the Court should remand the matter. [*Id*. at 10.]

As Plaintiff correctly points out, the Fourth Circuit has developed a two-part test for evaluating a claimant's subjective allegations of pain. *See Craig*, 76 F.3d at 594. At the first step, "the pain claimed is not directly at issue; the focus is instead on establishing a determinable underlying impairment ... which could reasonably be expected to be the cause of the disabling pain asserted by the claimant." *Id.*, 76 F.3d at 594. In this case, the ALJ followed the two-part test and, at the first step, found evidence of a medical impairment reasonably likely to cause the pain alleged by Plaintiff. [R. 27.] At the second step of the credibility inquiry, the ALJ is "to view any inconsistency or defect in the plaintiff's subjective testimony through a more discriminating lens because the plaintiff's subjective allegations . . . are consistent with the objective expectations." *Bragg v. Astrue*, C/A No. 8:06-2132-MBS, 2008 WL 348030, at *5 (D.S.C. Feb. 5, 2008). Plaintiff challenges the ALJ evaluation during the second step of the process during which the ALJ was to evaluate

"the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work." *Craig*, 76 F.3d at 595; SSR 96–7p.

Upon review, the Court finds that the ALJ properly applied the required analytical framework in considering the credibility of Plaintiff's allegations of pain. At the second step, the ALJ considered the record as a whole and identified specific reasons for her credibility finding supported by the record, as required by SSR 96–7p. The ALJ explained her findings during the second step of the evaluation process as follows:

> In terms of the claimant's alleged symptoms and limitations, which, as explained above, include chronic pain, weakness, and respiratory difficulty, which causes postural and exertional limitations, including a diminished capacity for any extended sitting, standing, walking, lifting, and carrying; a reliance on a cane for ambulation with lower extremity numbness and weakness; the need to lie down 75% of the day; vision difficulties with reduced ability to read, as well as headaches; disturbed sleep negative medicinal side effects; and an inability to tend to the full spectrum of routine daily tasks, I find his allegations unpersuasive and incredible; moreover, the merit of these assertions is further eroded by a number of factors that indicate that his condition did not rise to the level of severity that was alleged.
>
> First, the claimant has described daily activities, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. The record shows that the claimant retains the ability for an impressive spectrum of activities of daily living, including attending church; shopping in stores; following television programming; helping care for his two school-aged children; driving his children to school; preparing at least simple meals; making a bed; and socializing on a telephone (Exhibit 3E and testimony). Although the ability to engage in such activities of daily living is not dispositive, it is demonstrative of greater ability than that alleged by the claimant.

Next, the record additionally shows that the claimant took advantage of unemployment insurance benefits[8] from the 1st quarter of 2011 to the 1st quarter of 2012 (Exhibit 8D). Typically, one must hold him or herself out as ready, willing, and able to work to receive such benefits (*see*., S.C. Code Ann. § 41-35-110 (1976)).   This evidence further weighs against the credibility of the claimant's allegations.

Beyond that, although the record contains a number of emergency department visits, most visits were for similar complaints of back and abdominal pain, with little in the way of objective findings, and without recommendation for aggressive, intensive, or in-patient care.  Theses visits, in fact, were often described as non-emergent (Exhibits 1F, 2F, 15F, 17F, 19F, and 20F).

The record does contain a magnetic resonance imaging scan of the claimant's lumbar spine, which shows a moderate disc bulge at the L5-S1 level, but with only borderline canal stenosis (Exhibit 11F).  The claimant testified that Dr. Medina did indicate possible surgical intervention, but the claimant did not have the funds for surgery. Moreover, there is no recommendation for surgery from a specialist or emergency medicine physician.

Lastly, the medical evidence of record establishes that, with appropriate medicinal compliance, the claimant's impairments can be easily controlled with mere conservative treatment. Thus, these various factors, when considered together and in light of the overall evidentiary record, completely erode the veracity of the claimant's subjective allegations and render them incredible.

[R. 27–28.]

---

[8]Plaintiff takes issue with the ALJ's consideration of his receipt of unemployment benefits in assessing his credibility, by arguing that he received benefits prior to his alleged onset date. [Doc. 17 at 10.] Evidence of record shows Plaintiff received unemployment benefits beginning the first quarter of 2011 through the first quarter of 2012.  [R. 215–18.] Plaintiff's alleged onset date is October 2, 2011. [R. 24.] Thus, it was reasonable for the ALJ to consider the fact that Plaintiff received some benefits after his alleged onset date. The Court notes, however, that the ALJ did not consider this one factor to be dispositive on the issue of credibility; the ALJ's decision clearly considers the evidence of record and explains his conclusion regarding his credibility findings based on numerous factors.

Contrary to Plaintiff's argument, the ALJ was not required to merely accept Plaintiff's "subjective evidence" at the second prong of the evaluation.   The regulations provide that "allegations concerning the intensity and persistence of pain or other symptoms may not be disregarded *solely* because they are not substantiated by objective medical evidence." SSR 96–7p(emphasis added).   "This is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work." *Craig*, 76 F.3d at 595.   A claimant's subjective complaints "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the [symptoms] the claimant alleges she suffers."   *Id.*

Here, the ALJ specifically identified the limitations Plaintiff claimed were associated with his impairments.  For example, the ALJ noted that Plaintiff alleged that he:

- experienced chronic pain, weakness, and respiratory difficulty, which caused postural and exertional limitations, including a diminished capacity for any extended sitting, standing, walking, lifting, and carrying;

- had recently developed a reliance on a cane for ambulation with lower extremity numbness and weakness;

- had the need to lie down 75% of the day;

- had vision difficulties with reduced ability to read, as well as headaches;

- experienced disturbed sleep, and he noted negative medicinal side effects; and,

- experienced an inability to tend to the full spectrum of routine daily tasks, secondary to the limitations caused by his impairments.

[R. 26.]

Consistent with the regulations, the ALJ weighed Plaintiff's alleged symptoms with the available evidence, including objective evidence, and found that, with respect to Plaintiff's musculoskeletal problems with pain, the medical evidence of record contained a number of emergency room visits but little in the way of objective findings.  [*Id*.]  The ALJ also noted that Plaintiff's emergency room visits failed to result in a recommendation for aggressive, intensive, or in-patient care, and were often described a non-emergent.  [*Id*.] The ALJ further noted that, during a physical consultative exam with Dr. Dennis Jensen ("Dr. Jensen"), there was little in the way of objective findings consistent with Plaintiff's complaints.  [*Id*.]  As a matter of fact, Dr. Jensen noted that he felt Plaintiff was not making good effort during the exam.  [*Id*.]

Additionally, the ALJ noted that medical records from February 8, 2012, to July 18, 2013, from Dr. Jensen, Dr. Clifford Medina ("Dr. Medina"), and CareSouth, showed no significant difficulty with any of Plaintiff's impairments, with only ongoing conservative care and treatment for sciatica and back pain.  [*Id*.]  An MRI of Plaintiff's lumbar spine from February 28, 2013, did show some disc bulging but only borderline canal stenosis.  [*Id*.] The ALJ noted, however, that no specialist had indicated that Plaintiff required surgical intervention.  [*Id*.]  The ALJ also concluded that the medical evidence of record established that, with appropriate medicinal compliance, Plaintiff's impairments could be easily controlled with mere conservative treatment.  [R. 28.]

24

Upon considering Plaintiff's daily activities[9], the ALJ noted that Plaintiff attended church; shopped in stores; followed television programming; helped care for his two school-aged children; drove his children to school; prepared at least simple meals; made the bed; and socialized on the telephone. [R. 27–28.] And while the ALJ noted that Plaintiff's ability to engage in these activities of daily living is not dispositive, it is demonstrative of greater ability than that Plaintiff alleges. [R. 28.] Upon weighing the evidence above, the ALJ found Plaintiff's allegations unpersuasive and incredible. [R. 27.]

Considering the ALJ's analysis and weighing of the evidence, the Court finds the ALJ adequately explained her consideration of the evidence and her determination regarding the credibility of Plaintiff's alleged limitations associated with his impairments. The ALJ is within bounds to disregard Plaintiff's testimony to the extent it is inconsistent with the objective medical evidence in the record. *See Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005); *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986); *see also Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (noting that the "only fair manner to weigh a subjective complaint is to examine how pain affects the routine of life"). The ALJ's responsibility is to "make credibility determinations-and therefore sometimes must make

---

[9]Plaintiff appears to challenge the ALJ's consideration of his activities of daily living in assessing the credibility of his complaints. [Doc. 17 at 10.] However, the ALJ was entitled to consider Plaintiff's activities of daily living in assessing credibility. As a matter of fact, the regulations provide the following nonexhaustive list of relevant factors an ALJ should consider in evaluating a claimant's symptoms, including pain: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; (5) treatment, other than medication, received to relieve the symptoms; and (6) any measures the claimant has used to relieve the symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). The ALJ did not find Plaintiff's activities of daily living to be dispositive of the issue of credibility. [R. 28.] It was merely one of numerous factors considered by the ALJ.

negative determinations-about allegations of pain or other nonexertional disabilities." *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). If the ALJ points to substantial evidence in support of her decision and adequately explains the reasons for her finding on the claimant's credibility, the court must uphold the ALJ's determination. *See Mastro*, 270 F.3d at 176 (holding that the court is not to "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of" the agency). Here, the ALJ disregarded Plaintiff's complaints as being inconsistent with the record evidence and clearly pointed out substantial evidence in support of her credibility findings. And, Plaintiff does not direct the Court to any evidence not considered by the ALJ in making her credibility findings. Thus, the ALJ's decision is supported by substantial evidence.

### *Failure to Seek Unaffordable Medical Treatment*

Plaintiff argues that the ALJ made improper inferences penalizing Plaintiff for his failure to seek unaffordable medical treatment; and also penalized Plaintiff for his failure to follow treatment recommendations without explaining which recommendations he failed to follow. [Doc. 17 at 8–9.] Upon review of the ALJ's decision, the Court finds Plaintiff's argument misrepresents the ALJ's findings. The Court does not read the ALJ's decision as penalizing Plaintiff for failing to seek treatment or follow treatment recommendations as Plaintiff contends. The ALJ merely pointed out that no treating expert recommended treatment other than conservative treatment for Plaintiff's impairments. [*See* R. 26 and 28 (*citing* Exhibits 1F, 2F, 15F, 17F, 19F, and 20F). ] Additionally, the ALJ pointed out that Plaintiff's symptoms were easily controlled with appropriate medicinal compliance. [R. 28.] Again, Plaintiff fails to direct the Court to any evidence of record, not properly considered by the ALJ, which contradicts the ALJ's findings.

26

### *Improper Medical Judgment*

Plaintiff argues the ALJ made an improper medical judgment by concluding that there was no medical need for Plaintiff to rely on the use of a cane.  [Doc. 17 at 9–10.] The ALJ noted that Plaintiff represented that he used a cane for ambulation due to numbness and weakness in his lower extremities.  [R. 27.]  However, upon review of the medical records, the ALJ concluded that, in the absence of any findings of significant extremity weakness, atrophy, or dystrophy, she found no medical need for Plaintiff to rely on a cane for ambulation.  This Court finds the ALJ's reasoning is supported by substantial evidence.

Plaintiff testified that he used the cane because his leg goes numb at times and his wife thought it would be a good idea for him to have a cane for balance.  [R. 55.]  He also testified that he began using the cane about six-months prior to the hearing.  [R. 64.] However, Social Security Ruling 96–9p provides that :

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case.

SSR 96–9p, 61 Fed.Reg. 34,478–01, at 34,482 (July 2, 1996).  Upon considering the facts of this case, there is no evidence in the medical record of a medical need for Plaintiff's use of the cane.   To the contrary, there is no evidence of Plaintiff ever informing a physician about his need for a cane for balance, and there does not appear to be even a mention of Plaintiff using a cane for ambulation by any treating or examining medical source.

Upon review of the evidence of record, the Court notes that emergency room records between November 2010 and October 2011, in June 2012, and in May 2013 consistently indicated Plaintiff was ambulatory with no mention of a cane or other assistive device. [*See, e.g.,* R. 325, 340, 368, 452, 475.] A letter from Dr. Jensen dated December 27, 2011, indicated that Plaintiff denied any weakness or numbness in his left leg; denied any referrals to pain management, orthopedics or neurosurgical specialists; and denied any previous MRI or CAT scans of his back. [R. 379.] On skeletal exam, Plaintiff had an antalgic gait without any particular limping; but showed difficulty walking with his leg straight. [R. 380.] Lower extremity strength was 4/5 symmetric bilaterally. [*Id.*] Dr. Jensen noted he did not believe Plaintiff was making good effort on his exam, that he had normal neurological signs, and that his gait did not match the typical antalgic pattern seen with sciatic nerve problems. [*Id.*]

Treatment notes from Dr. Jensen dated February and March 2012 noted Plaintiff's gait as being normal with cranial nerves grossly intact and normal sensation. [*See* R. 387, 411, 418.] An MRI taken in February 2013 showed no abnormality at L1-2, L2-3, L3-4, L4-5; and moderate diffuse bulge of the annulus that bulges bilaterally into the neural foramen at L5-S1. [R. 422.] A radiology report dated May 2013 indicated degenerative disc disease at the lower lumbar level but, the spine was otherwise noted to be unremarkable. [R. 486.] Treatment notes from Marion Regional Hospital dated May 11, 2013, indicated that Plaintiff's pain onset about a week prior and he was able to ambulate independently. [R. 549.] Plaintiff denied musculoskeletal pain, numbness and tingling at the time. [*Id.*] And, notes from Plaintiff's ER visit on June 9, 2013, from a "recent injury" indicated negative straight leg raises both left and right. [R. 488–89.]

28

Accordingly, although Plaintiff disagrees with the ALJ's finding of no medical need for a cane, Plaintiff does not direct the Court to any evidence of record which would contradict the ALJ's findings. Thus, the Court finds that the ALJ's reasoning in support of her RFC determination is supported by substantial evidence.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that the Commissioner's decision be AFFIRMED.

IT IS SO RECOMMENDED.


July 19, 2016                         s/Jacquelyn D. Austin
Greenville, South Carolina           United States Magistrate Judge